IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

CONNIE MOBLEY,                          )
                                        )
        *Plaintiff*,                    )
                                        )   Civil Action No. 1:24-cv-2161 (PTG/IDD)
v.                                      )
                                        )
LOGS LEGAL GROUP LLP,                   )
                                        )
        *Defendant*.                    )


## MEMORANDUM OPINION

This Memorandum Opinion sets forth the reasons underlying the Court's May 27, 2025 Order granting Defendant's Motion for Judgment on the Pleadings (Dkt. 3) as to the dismissal of Plaintiff's claims. Dkt. 40. Plaintiff, Connie L. Mobley, proceeding *pro se*, brings several claims under the Fair Debt Collection Practices Act ("FDCPA") (15 U.S.C. § 1692a, *et seq.*) and state contract law against Defendant, LOGS Legal Group LLP, a law firm representing the current beneficiary of a secured interest in Plaintiff's property. Plaintiff requests (1) injunctive relief to halt the foreclosure of her home and enforce the terms of a purported agreement with Defendant; (2) a declaratory judgment with respect to the validity of her debt per the purported agreement; and (3) monetary damages for alleged violations under the FDCPA. Dkt. 1-1 ("Compl.").[1] In its

---

[1] The Court construes *pro se* filings "liberally" because their filings "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976) (internal quotations omitted)). Although Plaintiff's pleading is titled "Motion for Permanent Injunction against Foreclosure," the Court construes it as a complaint because it includes a Cover Sheet for Filing Civil Actions, a request for both equitable and legal relief, and factual allegations. Compl. at 1-2. Further, the Court construes the Complaint as bringing claims under the FDCPA and for breach of contract. *Id.*; *see* Dkt. 4 at 1.

Motion, Defendant argues that Plaintiff fails to state a claim for relief on its FDCPA and breach of contract claims. Dkt. 3 at 1. On December 9, 2024, this Court advised Plaintiff that she had twenty-one (21) days to file a response to the Motion, which Plaintiff did.[2] Dkts. 7, 8, 12. For the following reasons, the Court grants Defendant's Motion for Judgment on the Pleadings and dismisses the action without prejudice and with leave to amend.

## Factual Background

When reviewing a Rule 12(c) motion for judgment on the pleadings, the Court must accept "all well-pleaded allegations in the plaintiff's complaint as true" and draw "all reasonable factual inferences from those facts in the plaintiff's favor." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). The Court may additionally consider Defendant's answer and documents attached to Defendant's Motion "integral to and explicitly relied on in the complaint."[3] *Aaronson v. CHW Grp.*, No. 1:18-cv-1533 2019 WL 8953349 (E.D. Va. Apr. 15, 2019); *Zak v. Chelsea Therapeutics Int'l., Ltd.*, 780 F.3d 597, 606-07 (4th Cir. 2015). Finally, the Court may take judicial notice of the underlying facts from documents found in the U.S. Bankruptcy Court for the Eastern District of Virginia's records and public records held by the city.[4] *Zak*, 780 F.3d at 607 (permitting

---

[2] *See Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975). Although Plaintiff filed a response to Defendant's Motion, her response did not meaningfully respond to Defendant's arguments. *See* Dkt. 12 (requesting discovery information).

[3] Accordingly, the Court will consider the Notice of Sale (Dkt. 4-11). *See* Compl. ¶ 1 (referencing initiation of foreclosure proceedings).

[4] The Court will consider the following records from the bankruptcy proceedings: Deed of Trust (Ex. B, Dkt. 4-2); Assignment of Deed of Trust to Wells Fargo (Ex. C, Dkt. 4-3); Appointment of Equity Trustees as Substitute Trustee (Ex. D, Dkt. 4-4); Bankruptcy Court's Docket (Ex. E, Dkt. 4-5); Plaintiff's Bankruptcy Petition (Ex. F, Dkt. 4-6); Plaintiff's Bankruptcy Schedules (Ex. G, Dkt. 4-7); and Lien Modification Agreement (Ex. H, Dkt. 4-8). Additionally, the following attachments are public records: Promissory Note (Ex. A, Dkt. 4-1); Appointment of PFC as Substitute Trustee (Ex. I, Dkt. 4-9); Appointment of PFC and Auction.com-VA as Substitute Trustees (Ex. I-1, Dkt. 4-10), and 2024 Bankruptcy Docket (Ex. K, Dkt. 4-12).

judicial notice of public records); *Anderson v. Fed. Deposit Ins. Corp.*, 918 F.2d 1139, 1141 n.1 (4th Cir. 1990) (permitting judicial notice of bankruptcy court records).  Accordingly, the relevant facts are as follows:

Plaintiff owns a property located at 5168 Brawner Place, Alexandria, Virginia.  Compl. ¶ 1; Dkt. 2 ("Answer") at 1.  In October 2006, Plaintiff entered into a mortgage loan ("Note") of $403,150.00 from First Guaranty Mortgage Corporation ("First Guaranty") secured by a Deed of Trust ("DOT") for her property in Alexandria.  Dkt. 4-1; Dkt 4-2 at 2.  The Note identified the lender as First Guaranty and provided that "Lender may transfer this Note" and "anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'"  Dkt. 4-1 at 1.  The DOT identified Mortgage Electronic Registration Systems, Inc. ("MERS") as the beneficiary "acting solely as a nominee for Lender and Lender's successors and assigns." Dkt 4-2 at 2.  The "Substitute Trustee" provision in the DOT further permitted the lender to "from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder."  Dkt. 4-2 ¶ 24.  On July 18, 2012, MERS assigned its right, title, and interest in the DOT to Wells Fargo Bank, successor by merger to Wells Fargo Bank Minnesota, N.A. f/k/a Norwest Bank Minnesota, N.A., solely as trustee for Structured Asset Mortgage Investments II Inc. Bear Stearns Mortgage Funding Trust 2006-AR5, Mortgage Pass-Through Certificates, Series 2006-AR5 (hereafter referred to as "Wells Fargo").  Dkt. 4-3 at 1.  In accordance with the DOT, Wells Fargo removed the original trustee from the Deed in February 2013 and appointed Equity Trustees, LLC, as Substitute Trustee. Dkt. 4-4 at 1.

---

Additionally, the Court will not consider the prior notices of sales from Defendant to Plaintiff (Ex. L, Dkt. 4-13) because they are neither integral to the Complaint nor part of any public records or bankruptcy dockets for which this Court can take judicial notice.

On March 21, 2015, Plaintiff filed for Chapter 13 bankruptcy in the United States Bankruptcy Court for the Eastern District of Virginia. Dkt. 4-6 (referring to *In re Mobley*, No. 15-10958 (Bankr. E.D. Va. Mar. 21, 2015) ("2015 Bankruptcy Proceedings")). After granting Plaintiff's request to convert her case to a Chapter 7 proceeding, the Court discharged Plaintiff's personal liability on her debt, including the mortgage loan. Dkt. 42, *In re Mobley*, No. 15-10958 (Bankr. E.D. Va. Oct. 16, 2015). The court, however, made clear that a creditor could still "enforce a valid lien, such as a mortgage or security interest, against the debtor's property after the bankruptcy, if that lien was not avoided or eliminated in the bankruptcy case." *Id.* at 2.

In December 2016, Plaintiff and Select Portfolio Servicing, Inc. ("SPS"), acting as an agent of Wells Fargo as lien holder, executed a lien modification agreement following the Court's discharge of Plaintiff's personal liability, citing Plaintiff's "financial hardship." Dkt. 4-8 at 58. The agreement modified the loan's principal balance and established a new payment schedule. *Id.* at 59. It further noted that "Lien Holder continues to have an enforceable lien on the Property" and "[a]ll terms of the Lien Documents . . . remain in full force and effect." *Id.* On April 26, 2017, following the lien modification, SPS, on behalf of Wells Fargo, appointed Professional Foreclosure Corporation of Virginia ("PFC") as Substitute Trustee. Dkt. 4-9 at 1-2. On February 9, 2022, Wells Fargo appointed PFC and Action.com, LLC as Substitute Trustee. Dkt. 4-10 at 1.

The events underlying Plaintiff's suit began in June 2024, when Defendant sent a Notice of Sale to Plaintiff advising her of the foreclosure on her property in August 2024.[5] Dkt. 4-11 at 1; Compl. ¶ 1. On July 16, 2024, Plaintiff sent Defendant a Notice of Debt Validation Request

---

[5] This type of foreclosure is a "non-judicial foreclosure," where "notice to the parties and sale of the property occur outside court supervision." *Obduskey v. McCarthy & Holthus LLP*, 586 U.S. 466, 470 (2019) (citation omitted).

pursuant to 15 U.S.C. § 1692 that contested the debt in the Notice of Sale. Dkt. 1-1 at 6 ("Compl. Ex. A"). On July 23, 2024, Plaintiff sent Defendant a Notice of Fault and Opportunity to Cure stating that Defendant's "response by sworn affidavit" to the Debt Validation Request "is necessary within fifteen days to prevent your default." *Id.* at 11 ("Compl. Ex. B"). On July 30, 2024, Plaintiff sent a Notice of Default and Final Statement as well as a Non-Negotiable Notice of Invoice identifying an FDCPA violation and requesting payment of $1000 within ten calendar days. *Id.* at 13-16 ("Compl. Ex. C"). Defendant did not respond to any of the notices. *Id.* at 3.

On August 7, 2024, Plaintiff brought this suit against Defendant in the Alexandria Circuit Court.[6] *See* Dkt. 1-1. Construed liberally, the Complaint alleges two legal claims. First, Plaintiff argues that "Defendant's lack of response to the Debt Validation Request as required by 15 [U.S.C.] § 1692g and § 1692e(8) renders the alleged debt invalid." *Id.* at 4. Second, Plaintiff argues that Defendant's failure to respond to the Debt Validation Request and notices created "a contractual agreement with Plaintiff, as per the terms outlined in the notices . . . includ[ing] the invalidation of the debt and cessation of any foreclosure proceedings." *Id.* at 3. On December 2, 2024, Defendant removed the action to this Court under both federal question and diversity jurisdiction. Dkt. 1; *see* 28 U.S.C. §§ 1331, 1332. That same day, Defendant filed its answer to the Complaint and this Motion for Judgment on the Pleadings. Dkts. 2, 3. The parties subsequently completed briefing on the instant motion.[7] Dkts. 8, 10, 12.

---

[6] On August 20, 2024, Plaintiff filed her third case in Bankruptcy Court. *In re Mobley*, No. 24-11512 (Bankr. E.D. Va. 2024). The Court dismissed the case in October 2024. *Id.*

[7] Under Local Rule 7(F)(1), parties may not file additional briefs beyond what is required in that rule without first obtaining leave of Court. Plaintiff filed additional briefing on this Motion without leave of Court. *See* Dkt. 12. However, the Court notes that it considered all submitted materials in this matter. The additional briefing did not alter its decision.

## Legal Standard

Motions for judgment on the pleadings under Rule 12(c) are subject to the same standard as Rule 12(b)(6) motions to dismiss for failure to state a claim. *Burbach Broad. Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 405-06 (4th Cir. 2002); Fed. R. Civ. P. 12(c), 12(h)(2) ("Failure to state a claim upon which relief can be granted . . . may be raised . . . by a motion under Rule 12(c)."). Like 12(b)(6) motions, a Rule 12(c) motion "tests the sufficiency of a complaint" without "resolv[ing] contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)).

To survive a 12(c) motion, a complaint must assert factual allegations that "raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). "The Court should not dismiss any count unless it appears beyond doubt that the plaintiff could not recover under any set of facts which could be proven." *Kutsmeda v. Tr. One Mortg. Corp.*, No. 305-cv-518, 2005 WL 3357347, at *2 (E.D. Va. Dec. 9, 2005) (citing *Doby v. Safeway Stores, Inc.*, 523 F. Supp. 1162, 1167 (E.D. Va. 1981)). A court should grant a 12(c) motion when the case can be determined as a matter of law. *Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 474 (4th Cir. 2014).

## Analysis

At the outset, this Court agrees with Defendant that because Plaintiff's briefs fail to address *any* of the arguments in Defendant's Motion, Plaintiff has effectively conceded all arguments. Dkt. 10 at 3. This Court has repeatedly held that when a party fails to respond to an argument in an opposition brief, it abandons those arguments. *See, e.g., Marcotte v. Va. Beach City Pub. Sch.*, No. 2:17-cv-606, 2018 WL 11509748, at *6 (E.D. Va. Aug. 24, 2018); *Chamblee v. Old Dominion*

*Sec. Co.*, No. 3:13-cv-820, 2014 WL 1415095, at *8 (E.D. Va. Apr. 11, 2014). Plaintiff's additional briefs set forth a medley of demands and additional legal claims upon third parties. *See* Dkt. 8 (claiming, for example, that "SPS has made false claims against" Plaintiff, and that Wells Fargo and the Courthouse "must complete" IRS forms);[8] Dkt. 12 (raising Title 15, Consumer Credit Protection Act, and Dodd-Frank Wall Street Reform and Consumer Protection Act claims against SPS and Wells Fargo, for instance). Even when reading Plaintiff's briefs liberally, this Court cannot find a single acknowledgement or response to Defendant's arguments. This Court will also not treat Plaintiff's brief as an attempt to amend the original Complaint. *See S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013) ("It is well-established that parties cannot amend their complaints through briefing."). While Plaintiff's concession of all arguments alone should warrant dismissal here, the Court will address whether judgment on the pleadings is appropriate as a matter of law.

When construed liberally, the Complaint raises two legal claims. First, Plaintiff asserts that Defendant violated FDCPA § 1692g and 1692e(8) by failing to respond to Plaintiff's debt validation request and subsequent notices after the initial Notice of Sale, thus "render[ing] the alleged debt invalid." Compl. ¶ 4. Second, Plaintiff claims that Defendant's silence on Plaintiff's proposed terms in the notices created a binding agreement, which this Court should enforce. *Id.* ¶ 34. Defendant argues that Plaintiff has stated neither a plausible FDCPA claim nor a breach of contract claim under Virginia law, thus warranting judgment on the pleadings. Dkt. 4 at 9-24. This Court agrees.

---

[8] As Magistrate Judge Davis advised Plaintiff in this matter on an identical request Plaintiff made to the Court, "[t]he information that Plaintiff requests is not information that this Court is able to provide, and the completion of such requests is not a function of the Court." Dkt. 13.

A. **The Complaint does not sufficiently allege an FDCPA cause of action.**

The FDCPA provides a cause of action for plaintiffs where "(1) the plaintiff has been the object of collection activity arising from consumer debt; (2) the defendant is a debt collector as defined by the FDCPA; and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Penn v. Cumberland*, 883 F. Supp. 2d 581, 586–87 (E.D. Va. 2012) (quoting *Ruggia v. Wash. Mut.*, 719 F. Supp. 2d 642, 647 (E.D. Va. 2010)). Plaintiff's allegations fail to support any of these elements.

i.    **Plaintiff has not plausibly alleged that she was the object of debt collection activity by Defendant.**

First, Defendant asserts that Plaintiff has failed to "allege whether and how she was the object of collection activity by LOGS." Dkt. 4 at 11. The Court agrees the Complaint does not explicitly identify the debt collection activity. The Court, however, will construe Plaintiff's statement that Defendant "initiated foreclosure proceedings" and issued the Notice of Sale as a reference to debt collection activity. Compl. ¶ 1. Even then, Defendant correctly contends that "even if the Court were to construe the basis of Plaintiffs' FDCPA claim as the . . . Notice of Sale," Plaintiff would still fail to allege a plausible basis for a FDCPA violation. Dkt. 4 at 11.

"It is well-established that not every communication between a debt collector and a consumer is subject to the FDCPA and that the FDCPA applies only to communications that are intended to collect a payment." *Cumberland*, 883 F. Supp. at 587. Whether a "communication is intended to collect a payment" depends on "the nature of the parties' relationship, as well as the purpose and context of the communication and whether an 'animating purpose' of the communication is to induce payment." *Id.* at 587-88. Absent a demand for payment, a communication generally cannot qualify as a "debt collection" under the Act. *See In re Dubois*, 834 F.3d 522, 527 (4th Cir. 2016); *Moore v. Commonwealth Trs., LLC*, No. 3:09-cv-731, 2010

WL 4272984, at *4 (E.D. Va. Oct. 25, 2010). Courts in the Fourth Circuit have previously characterized notices of foreclosure as attempts to collect debt only where the notice occurs after default, identifies the remaining debt balance, and offers assistance to the debtor to cure the debt. *Goodrow v. Friedman & MacFadyen, P.A.*, 788 F. Supp. 2d 464, 471 (E.D. Va. 2011) (holding that foreclosure notice was a communication under the FDCPA where it informed plaintiff "that his home would be sold unless the entire balance of his promissory note was paid").

Here, Plaintiff has not plausibly alleged facts suggesting Defendant's communications with Plaintiff through the Notice of Sale was an attempt to collect debt. Moreover, on the Court's review, the Notice of Sale does not appear to collect a debt from Plaintiff. Dkt. 4-11 at 1. It does not reference any remaining debt, offer assistance to cure the debt, or suggest that foreclosure is because of Plaintiff's default. *Id.* Rather, it appears to communicate with Plaintiff as a general lienholder. *Id.* (stating "[o]ur office has conducted a title examination in which we have discovered that you may have a lien against the property listed above.").

Absent a demand for payment, it is also irrelevant, as Defendant notes, that the Notice includes a disclaimer stating "[t]his communication is from a debt collector." *Id.* at 2; Dkt. 4 at 12. A statutorily required disclaimer alone cannot establish FDCPA liability; otherwise, "debt collectors will be placed in a conundrum, exposed to liability for both including the disclaimer and for omitting it." *Boosahda v. Providence Dane LLC*, 462 Fed. App'x. 331, 334 (4th Cir. 2012); *see also Hammack v. PHH Mortg. Corp.*, No. 3:22-cv-111, 2022 WL 2374368, at *5 (E.D. Va. June 30, 2022) (holding the disclaimer that "this is an attempt to collect a debt" did establish FDCPA liability where the notice also included an offer to assist plaintiff with curing the default of the loan); *Goodrow v. Friedman & MacFadyen, P.A.*, No. 3:11-cv-20, 2013 WL 3894842, at *7 (E.D. Va. Jul. 26, 2013) (holding notice of sale was an attempt to collect debt because it listed

the debt owed, stated it came from a debt collector, and provided opportunity to dispute the debt). Therefore, as a matter of law, this Court finds that the Notice of Sale was not an "attempt to collect a debt" but rather a standard notice of a nonjudicial foreclosure to a lienholder.

**ii.   Plaintiff has not plausibly alleged that Defendant is a debt collector under the FDCPA.**

The FDCPA defines a "debt collector" as "any person . . . in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or asserted to be owed or due another." 15 U.S.C. § 1692a(6). In arguing that it is not a "debt collector" under the Act, Defendant relies on Supreme Court precedent stating that a business, such as a law firm, engaged in no more than nonjudicial foreclosure proceedings does not qualify as a "debt collector" under the FDCPA, except for under 15 U.S.C. § 1692f. Dkt. 4 at 13 (citing *Obduskey*, 586 U.S. at 570); *see Obduskey*, 586 U.S. at 473 (stating businesses in enforcement of security interests are "debt collectors" under the FDCPA only in the limited context of § 1692f(6), which prohibits a debt collector from nonjudicial foreclosure in limited circumstances); see *also Hammack*, 2022 WL 2374368, at *4.

The Court agrees. Plaintiff has not alleged sufficient facts to show that Defendant regularly engages in debt collection, and the Court cannot find any such indication, even when viewed in the light most favorable to Plaintiff.

**iii.   As a matter of law, the pleadings and exhibits do not support the allegation that Defendant's conduct violated §§ 1692g or 1692e(8) under the FDCPA.**

Finally, Plaintiff has not sufficiently alleged that Defendant engaged in conduct prohibited under the FDCPA. Plaintiff suggests that Defendant's conduct runs contrary to § 1692g's obligation for debt collectors to respond to consumers after an initial communication and §

10

1692e(8)'s bar on false or misleading communications with respect to debt collection. Compl. ¶ 4. The Court finds that Plaintiff has not alleged facts to support either claim.

### 1. Section 1692g

In relevant part, § 1692g(a) requires that "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall . . . send the consumer a written notice" with specific information about the debt, as set out in the provision. Section 1692g(b) continues that "[i]f the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed . . . the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt."

Plaintiff alleges that Defendant violated these provisions by failing to respond to her "Debt Validation Request" and subsequent notices. Compl. ¶ 4. Defendant correctly states that "both obligations [under §§ 1692g(a) and (b)] turn on whether the communication from the debt collector was the 'initial communication,'" and Plaintiff failed to allege what constituted an "initial communication" or that she timely disputed it. Dkt. 4 at 15.

As Defendant notes, Plaintiff never identifies what "initial communication" she responded to when sending a "Debt Validation Request." *Id.* at 17. Given that Plaintiff does not reference any communications from Defendant other than the Notice of Sale, the Court construes the Complaint to suggest that Plaintiff responded to the Notice of Sale when sending her Debt Validation Request. Compl. ¶ 2. Even then, Plaintiff fails to state a plausible violation here.

First, as the Court established earlier, the Notice of Sale does not qualify as a "communication" under the FDCPA, much less an "initial" communication between parties. Second, as Defendant states, even if it were an "initial communication," Plaintiff's dispute letter

11

would be untimely under § 1692g(b)'s 30-day period for disputes, where the Notice was sent on June 14, 2024, and the dispute letter was dated July 17, 2024. *See* Dkt. 4 at 17; Dkt. 4-11; Compl. Ex. A. For these reasons, the allegations establish that Defendant had no duty to respond to Plaintiff under the FDCPA and, therefore, did not violate § 1692g.

### 2. Section 1692e(8)

Section 1692e(8) prohibits debt collectors from using "false, deceptive, or misleading representation or means in connection with the collection of any debt," including "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." As Defendant correctly states, "Plaintiff raises no facts suggesting (let alone supporting), the allegation that LOGS threatened to or actually did report Plaintiff's credit information regarding the Loan with the knowledge that the debt was false or disputed." Dkt. 4 at 19. Accordingly, Plaintiff has not alleged a basis for liability under § 1692e either.

### B. The Complaint does not sufficiently allege a breach of contract claim.

Plaintiff's breach of contract claim suggests that by failing to respond to her Validation Request and subsequent letters, "Defendant has entered into a contractual agreement with Plaintiff," in which Defendant agreed to Plaintiff's terms on "invalidation of the debt and cessation of any foreclosure proceedings." Compl. ¶ 3; Dkt. 1-1 at 11-12 (Compl. Ex. B, Plaintiff's Notice of Fault and Opportunity to Cure to Defendant) ("[T]he lack of reply within fifteen days will be construed as an admission of the invalidity of the debt, the relinquishment of any legal claim(s), and the acknowledgement that the entity named on the account is a victim of identity fraud."); *id.* at 16 (Ex. C, Plaintiff's Notice of Default and Final Statement to Defendant) ("The account in

question has been invalidated, and it is imperative that your company promptly issues a notice confirming the satisfaction of the account.").

Under Virginia law, a breach of contract claim first requires showing a "legally enforceable obligation of a defendant to a plaintiff." *United States v. Snowden*, 611 F. Supp. 3d 206, 214 (E.D. Va. 2019) (quoting *Filak v. George*, 594 S.E.2d 610, 614 (Va. 2004)). A legally enforceable contract exists "only when an offer is accepted," with "mutual assent of the contracting parties." *Irving v. PAE Gov. Servs., Inc.*, 249 F. Supp. 3d 826, 837 (E.D. Va. 2017) (quoting *Beazer Homes Corp. v. VMIF/Anden Southbridge Venture*, 235 F. Supp. 2d 485, 490 (E.D. Va. 2002)).

Plaintiff cannot plausibly claim that Defendant's silence created an enforceable obligation under the terms of Plaintiff's notices. Compl. ¶ 3. The law is clear that "silence alone will not serve as acceptance of a contract." *Klein v. Verizon Comm'ns., Inc.*, No. 1:12-cv-757, 2017 WL 5071306, at *4 (E.D. Va. Aug. 9, 2017). While assent "may be inferred from the acts and conduct of the offeree," Plaintiff has alleged no acts or conduct suggesting Defendant accepted Plaintiff's terms. *Manzaneda v. Seterus, Inc.*, No. 116-cv-1216, 2017 WL 2274329, at *6 (E.D. Va. May 24, 2017), *aff'd*, 700 F. App'x 281 (4th Cir. 2017) (quoting *Bernstein v. Bord*, 132 S.E. 698, 699 (Va. 1926)). Because Plaintiff has not adequately alleged the existence of a contract, her breach of contract claims fail.

## C. The Court will use its discretion to grant Plaintiff leave to amend her Complaint.

Granting a motion for judgment on the pleadings generally dismisses the case with prejudice. However, because 12(c) and 12(b)(6) motions employ the same legal standards, courts have discretion to dismiss a complaint without prejudice when granting a 12(c) motion that states a failure to state a claim. *Wynne v. I.C. Sys., Inc.*, 124 F. Supp. 3d 734, 741 (E.D. Va. 2015) (dismissing without prejudice because "the sparse allegations" and "minimal record" did not

13

permit the court to assess Plaintiff's legal claims) (citing *Pruett v. U.S. Bank Nat'l Ass'n,* No. 1:12-cv-6, 2012 WL 5465554, at *2 (W.D. Va. May 4, 2012)); *see also Barnette v. Wells Fargo Bank, N.A.*, No. 3:20-cv-124, 2020 WL 3473640, at *7 (E.D. Va. June 25, 2020) (dismissing case without prejudice under review of 12(c) motion). Because Plaintiff is proceeding *pro se*, this Court will grant Defendant's Motion but dismiss the claims without prejudice.

Additionally, the Court notes that Plaintiff has filed excessive briefs without leave of court, demanded this Court to produce discovery, and failed to engage meaningfully with the briefing process. *See* Dkts. 9, 11, 14, 17-18, 24-25, 35-36, 38. Plaintiff is strongly advised to follow this Court's rules going forward. Should Plaintiff continue to engage in improper conduct, the Court could dismiss all counts of her Complaint with prejudice. *See Sorto v. AutoZone, Inc.*, 821 F. App'x. 188, 192 (4th Cir. 2020) (dismissing complaint with prejudice given plaintiff "failed to comply with pleading rules and the court's repeated directives about complying with them.").

Accordingly, for the foregoing reasons, the Court finds that Plaintiff has not alleged sufficient facts to support FDCPA or breach of contract claims against Defendant. Defendant's Motion for Judgment on the Pleadings is granted with respect to the dismissal of all claims. Dkt. 3. However, Defendant's Motion is denied with respect to its request to dismiss with prejudice, and the Court grants dismissal without prejudice and with leave to amend.

The Clerk is directed to mail a copy of this memorandum opinion to Plaintiff, proceeding *pro se*.

Entered this ____ day of June, 2025.
Alexandria, Virginia

/s/
Patricia Tolliver Giles
United States District Judge

14